Smith Thomas v. State.

No. 2178. Decided January 8, 1913.

Rehearing denied March 26, 1913.

**1.—Assault to Murder—Statement of Facts—Rehearing.**

Where the case was affirmed in the absence of a statement of facts, but it was shown on motion for rehearing that the clerk had inadvertently omitted the same from the record, the case will be heard on its merits.

**2.—Same—Reasonable Doubt—Charge of Court.**

Where, upon trial of assault to murder, the evidence developed two theories, one, that of the State, that the defendant made the assault with intent to kill, and that of the defense, of perfect self-defense, and the court

properly charged on the burden of proof, reasonable doubt and the presumption of innocence, there was no error in the court's refusal of defendant's requested charge that there must be a concurrence of the twelve minds of the jurors, etc., with reference to reasonable doubt.

### 3.—Same—Charge of Court—Self-Defense.

Where, upon trial of assault to murder, the court submitted defendant's theory of self-defense in a proper charge, there was no error.

### 4.—Same—Charge of Court—Manslaughter—Aggravated Assault.

Where, upon trial af assault to murder, the issue of manslaughter did not arise from the evidence, there was no error in the court's failure to charge on aggravated assault.

### 5.—Same—Rule Stated—Aggravated Assault.

If a case is either assault to murder or perfect self-defense, it is not error to fail to charge on aggravated assault. Following Johnson v. State, 47 Texas Crim. Rep., 300, and other cases.

### 6.—Same—Rule Stated—Aggravated Assault.

If the case is either assault to murder or that defendant is guilty of no offense, it is not error to fail to charge on aggravated assault. Following Bramlette v. State, 21 Texas Crim. App., 611, and other cases.

### 7.—Same—Manslaughter—Rule Stated—Adequate Cause.

If, had death resulted, the issue of manslaughter would not be in the case, it is not error to fail to charge on aggravated assault on the theory of sudden passion aroused by inadequate cause. Following Anderson v. State, 15 Texas Crim. App., 447, and other cases.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Gibson* and *W. W. Wander,* for appellant.—On question of statement of facts being left out by inadvertence of clerk: Shaffer v. State, 58 Texas Crim. Rep., 646, 127 S. W. Rep., 206.

On question of court's failure to charge on aggravated assault: Stevens v. State, 38 Texas Crim. Rep., 550; Canister v. State, 46 id., 221; Cooper v. State, 49 id., 28; Goode v. State, 32 id., 505; Slaughter v. State, 34 id., 81.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted for an assault with intent to murder, convicted and his penalty fixed at three years in the penitentiary.

There is no statement of facts in the record. In the absence of a statement of facts none of the questions attempted to be raised by appellant can be passed upon by this court. Therefore, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 26, 1913.

PRENDERGAST, JUDGE.—When this case was affirmed there was no statement of facts on file in this court. Since then the clerk of the lower court has sent up a statement of facts which shows that it was filed in the lower court in ample time and was not sent with the other record, and filed in this cause with the record, by an oversight. This is shown properly by appellant's motion for rehearing. We now pass on appellant's motion for rehearing and the questions raised, considering said statement of the facts.

The evidence shows but two theories. First, by the State, a clear case of assault with intent to kill; second, on behalf of appellant, perfect self-defense.

Appellant had a room, or house rented in Houston where he lived. A certain negro woman who did not live with him came to his house each day to prepare her meals and that of appellant, too. She also did additional cooking and carried what she cooked additionally to an oil mill where the assaulted party, Alexander, and a great many others worked. Alexander, the assaulted party, began his attentions to said woman and, it seems, went to appellant's house for that purpose. This angered appellant and he told Alexander he didn't want him about his house fooling around that woman; that if he wanted the woman to take her away from there, but not come to his house with her. It seems, after this, appellant heard that Alexander had been about his house again fooling with the woman. Appellant, thereupon, armed himself with a pistol and went to the mill where Alexander was at work. Before he saw Alexander there, he saw other friends and acquaintances at the mill. All of the witnesses practically, testify that appellant was mad when he came there and looked mad. One witness for the State testified that when he saw appellant come to the mill mad, he asked him where he was going; appellant told him he was going to see Alexander and that if Alexander started anything he would blow him up. He at once proceeded to call Alexander out and they had some fuss then, appellant demanding to know if he hadn't already told Alexander to stay away from his house about that woman. No fight then occurred. Alexander then left appellant, went around in the mill attending to his work, but very soon came back to where appellant was. The difficulty was renewed between them and, according to the State's testimony, appellant, without any provocation, and, as Alexander said, with his back turned towards him, appellant pulled out a pistol and at close range shot at Alexander. Someone called out to Alexander to look out. He thereupon jumped behind another party and when appellant shot he shot the other party, when shooting at Alexander, the ball passing entirely through the body of the other party. Everybody, parties and witnesses, except appellant then ran and left the scene. When appellant

first called Alexander to him and attacked him about again going to his house in connection with that woman, Alexander had a knife in his hand, he says, holding it as if sharpening a pencil. No one claims that he at that time made any attack or attempted attack upon appellant. When he returned to the scene after he had gone around in the mill attending to his duties, he still had the knife in his hand. Appellant and his witnesses claim that Alexander then attacked him with the knife and made at him as if to cut him, and that, thereupon, appellant in self-defense, and only in self-defense, shot at Alexander, but instead of hitting him, shot the other fellow behind whom Alexander took refuge.

It will be thus seen, as stated above, that there were only two theories presented. The State's that of an assault with intent to kill, solely and simply; that of the defendant, perfect self-defense solely.

Among others, appellant requested this special charge, which was refused: "Upon the trial of the criminal case by a jury, the law contemplates the concurrence of twelve minds in the conclusion of guilt before conviction can be had. Each individual juror must be satisfied beyond a reasonable doubt of the defendant's guilt before he can, under his oath, consent to a verdict of guilty. Each juror should feel the responsibility resting upon him as a member of the jury and should realize that his own mind must be convinced beyond a reasonable doubt of the defendant's guilt, before he can consent to a verdict of guilty. Therefore, if any individual member of the jury after having duly considered all the evidence in the case and after consultation with his fellow jurors, should entertain such reasonable doubt of defendant's guilt, as is set forth in their instructions in this case it is his duty not to surrender his own convictions simply because the balance of the jury entertains different convictions."

The court properly charged as the statute requires that the burden of proof was upon the State and that the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt and "in case you have a reasonable doubt as to defendant's guilt, you will acquit him and say by your verdict not guilty." This was all the charge the court should have given. In no case should the court give such a charge as that above requested.

The court, in the main charge, correctly submitted the State's theory of the case to the jury, requiring the jury to believe, beyond a reasonable doubt, that if the appellant assaulted said Alexander with a deadly weapon and with malice and with intent to kill and murder him, and that said assault was not committed in self-defense, to convict him. Then the court submitted in accordance with the issue raised by the facts, appellant's self-defense in a proper charge, and told them that if he committed the assault to defend himself from either losing his life or serious bodily injury at the hands of Alexander to acquit him. The court correctly refused appellant's requested

charge to the effect that if defendant shot one McElroy intending to shoot Alexander and did not shoot Alexander, then to acquit him.

We have carefully considered all of appellant's requested charges and complaints to the court's charge and in our opinion, none of them present any error. It is unnecessary to take them up and discuss them separately.

No question of manslaughter would have been raised by the evidence if appellant had killed Alexander, and as only an assault to murder on the one hand, and perfect self-defense on the other, arose and the court properly submitted these issues, which were found against appellant, the court should not have charged on aggravated assault. On these subjects Mr. Branch, in his Criminal Law, in section 521, correctly lays down these propositions: First, if a case is either assault to murder or perfect self-defense, it is not error to fail to charge on aggravated assault, citing Johnson v. State, 47 Texas Crim. Rep., 300, 85 S. W., 312; Moore v. State, 31 Texas Crim. Rep., 234, 20 S. W., 563; Moore v. State, 53 Texas Crim. Rep., 113, 107 S. W., 833; Moody v. State, 509 S. W., 894; Duval v. State, 70 S. W., 543; Barnes v. State, 39 Texas Crim. Rep., 184, 45 S. W., 495; Phillips v. State, 36 S. W., 86; Phillips v. State, 306 S. W., 441.

Second, if the cases is either assault to murder or that defendant is guilty of no offense, it is not error to fail to charge on aggravated assault. Bramlette v. State, 21 Texas Crim. App., 611, 2 S. W., 765; Harris v. State, 47 S. W., 643; Pugh v. State, 2 Texas Crim. App., 539; Sims v. State, 4 Texas Crim. App., 144; Winn v. State, 5 Texas Crim. App., 621; Ford v. State, 56 S. W., 338; Collins v. State, 6 Texas Crim. App., 72; Baker v. State, 7 Texas Crim. App., 612; Halliburton v. State, 34 Texas Crim. Rep., 410, 31 S. W. Rep., 297; Schrimscher v. State, 36 Texas Crim. Rep., 461, 37 S. W. Rep., 864; Colbert v. State, 52 Texas Crim. Rep., 486, 107 S. W. Rep., 1115; Harding v. State, 60 Texas Crim. Rep., 327, 131 S. W., 1092.

Third, if had death resulted, the issue of manslaughter would not be in the case, it is not error to fail to charge on aggravated assault on the theory of sudden passion aroused by inadequate cause, citing Anderson v. State, 15 Texas Crim. App., 447; Harris v. State, 47 S. W., 643; Barbee v. State, 34 Texas Crim. Rep., 129, 29 S. W., 776; Ayres v. State, 26 S. W. Rep., 396; Taylor v. State, 17 Texas Crim. App., 46; Granger v. State, 24 Texas Crim. App., 45, 5 S. W. Rep., 648; Rider v. State, 26 Texas Crim. App., 334, 9 S. W. Rep., 688; Summers v. State, 33 S. W. Rep., 124.

There being no reversible error shown, the motion for rehearing is overruled.

*Overruled.*